[Civ. No. 6872. Fourth Dist. Nov. 21, 1962.]

CARL L. HOFFMAN, Plaintiff and Appellant, v. PEDLEY SCHOOL DISTRICT, Defendant and Respondent.

Richman, Garrett & Ansell, Lewis Garrett and Lionel Richman for Plaintiff and Appellant.

Ray T. Sullivan, Jr., County Counsel, James H. Angell, Assistant County Counsel, and John Woodhead, Deputy County Counsel, for Defendant and Respondent.

SHEPARD, J.—This is an appeal from an order denying plaintiff's application for a preliminary injunction.

## FACTS

This cause comes to us as one of four appeals respecting which the parties have stated by stipulation in writing filed with this court that "the matters of law and fact are similar in all four cases" and that therefore the four cases may be consolidated for purposes of appeal and for briefs.

Plaintiff's complaint, filed May 3, 1961, after alleging defendant's political status and plaintiff's standing as a county taxpayer, sets forth in essence that defendant school district through its board of trustees did, on January 25, 1961, publish a notice calling for bids for the construction of a school building and in said notice specified the prevailing hourly wage rate pursuant to the Labor Code and particularly section 1773; that "Section 1773.1 further provides that such per diem wages shall be deemed to include the employer payments for health and welfare, pensions, vacation and similar purposes . . ."; that defendants failed to announce the per diem wages including additional benefits referred to in said section 1773.1, but merely announced the hourly wage rates without considering said additional benefits; that applicable wage rates had, prior to publication of said notice, been established by a collective bargaining agreement and such rates had been accepted as the basis for rates for federal public works in the vicinity; that the rates set forth in said notice are the same wages per hour as in said collective bargaining agreement set forth; that said collective bargaining agreement additionally sets forth certain other described benefits relating to health, welfare, vacation and pension benefits amounting to 10 cents per hour for some crafts and ranging up to 33 cents per hour; that on March 1, 1961, defendant entered into a written agreement for said public work with Arthur Coltrain. Plaintiff in said complaint contends that the contract so let is void in that it does not provide for payment of the prevailing wage and asks for an injunction to restrain the alleged illegal expenditure of public funds on said contract. Plaintiff's motion for a temporary restraining order was denied and plaintiff appeals.

## ADMINISTRATIVE REMEDY

The parties diverge on several legal contentions but since plaintiff failed to avail himself of the administrative procedure provided by the statute and that failure is, of itself,

fatal, we need discuss that alone. Plaintiff nowhere pleaded that he had followed the procedure set forth in Labor Code section 1773.4 and expressly admits that his administrative remedy thus provided was not pursued.

Applicable sections of the Labor Code provide in essence respecting the problem here involved, as follows:

§ 1770. "The body awarding the contract or authorizing the public work shall determine the general prevailing rate of per diem wages in accordance with the standards set forth in Section 1773, and *its determination in the matter shall be final* except as provided in Sections 1773.4. . . ." (Italics ours.)

Section 1773 provides that the school board shall ascertain the general prevailing rate of per diem wages in the locality and shall specify in the call for bids what the prevailing rate is; that in determining rates the board shall consider rates established by collective bargaining and rates predetermined for federal public works.

Section 1773.1 provides that per diem wages *shall be deemed to* include health and welfare, pension, and similar purposes when used in this chapter. Provision is made for the filing of copies of collective bargaining agreements with the Department of Industrial Relations and that when so filed they may be considered in establishing prevailing wage rates.

Section 1773.4 provides that any prospective bidder, a representative of any type of workman or the awarding body may, within ten days after the commencement of the advertising of the call for bids, file with the Director of Industrial Relations a verified petition to review the rates on the ground that they have not been determined in accordance with the provisions of section 1773. Then follows detailed procedure for such review, the decision thereof, the delay of the closing date for submission of bids and final award, totalling a maximum of 32 days for final decision of any disputed wage rate.

By declaration of the school superintendent there was filed a *haec verba* copy of the published notice. Its correctness is not denied or questioned by plaintiff. It sets forth, *inter alia,* the hourly minimum wage for all types of workmen required and provides:

"The hourly wage is based on an eight hour day. The hourly rate is the per diem rate divided by the number of hours constituting a working day. All work performed in excess of eight (8) hours per day or forty (40) per week or on holidays,

Saturdays and Sundays shall be paid for at the rate for overtime of the craft involved.''

A reading of the whole record makes it clear that plaintiff is, as he states in his opening brief, an ''officer of several labor organizations directly and vitally interested in the protection of collective bargaining agreements arduously negotiated,'' and therefore claims standing to sue in that capacity. He clearly had the right, as a union representative, to initiate and pursue the administrative procedure provided by Labor Code section 1773.4. This he did not do, but rather, waited some four months after the notice was published and two months after the bids were let to bring this action.

Plaintiff's action is the very procedure which the Legislature sought to forestall and stop when it provided in section 1770 that the finding on wage rates discussed in section 1773 shall be *final except as provided* in section 1773.4.

In 1951 this court was confronted with a somewhat similar action in which it was sought to have a contract declared void because of alleged errors in the advertised prevailing wage scale. We then said, in *Jennings* v. *Strathmore Public Util. Dist.*, 102 Cal.App.2d 548 [228 P.2d 838], at page 551:

''If plaintiff could maintain such an action because he did not like the prevailing wage scale fixed, after the work was nearly done, then any claimed 'citizen resident' could, at any time, without limitation, bring an action to declare such contracts void. Furthermore, there is a possibility that only the wages of one craft might be questioned and that only for some small amount. If the prevailing wage scale is subject to review by the courts, under all conditions, and if a court should happen to determine that a public body was in error on any one small item, it could invalidate a contract irrespective of size and regardless of time, in the absence of a showing of arbitrary or capricious judgment on the part of such public body. We do not believe that the Legislature ever intended any such effect to be given to the prevailing wage scale statutes.''

The first Legislature after the decision of the above case enacted section 1773.4 and amended section 1770 to make it conform to the administrative procedure so provided. It is our opinion that the Legislature meant by the provisions so inserted in the year 1953, exactly what was said; that if any of the interested parties named in the section feels that the order fixing prevailing wages is erroneous he may appeal by petition to the Director of Industrial Relations, whose decision

will be rendered not more than 20 days after filing of the petition. This means a maximum of 32 days for the entire administrative procedure after first publication of notice calling for bids. The procedure is reasonably prompt and efficacious and eliminates unconscionable delays in getting public work done. In the case at bar, there is no question but that defendant board did make an order fixing the prevailing wage for construction purposes and did publish in a newspaper of general circulation as provided by statute. In essence, plaintiff's complaint goes no further than to allege that the board erroneously fixed the wrong wage. This is precisely what the two sections, 1770 and 1773.4, provide administrative procedure to correct.

 The Supreme Court, in *United States* v. *Superior Court*, 19 Cal.2d 189 [120 P.2d 26], at pages 194 and 195, said, "It is now firmly established in this state that a litigant must invoke and exhaust an administrative remedy provided by statute before he may resort to the courts. Jurisdiction to entertain an action for judicial relief is conditioned upon a completion of the administrative procedure. [Citation.] In the present case, the persons who are the plaintiffs in the injunction proceeding invoked the administrative process to secure a review of the challenged order and, at practically the same time, sought judicial relief. The respondents apparently contend that the requirement of exhaustion of administrative remedies applies only to erroneous orders and does not preclude judicial interference where, as here, an order is assailed as a nullity because illegally adopted and where the agents for enforcement appointed thereunder are charged with being mere pretenders claiming powers which they do not lawfully possess. But there is no substantial difference, insofar as the necessity for resort to administrative review is concerned, between an erroneous order and one which, it is claimed, is being executed in violation of statutory authority.

 "Conceding the existence of such a distinction, however, the doctrine of exhaustion of administrative remedies is not so limited. For example, it lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction. [Citations.] And even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy

has been held to be a prerequisite to equitable relief. [Citations.]"

See also *Dunham* v. *City of Westminister*, 202 Cal.App.2d 245, 249 [4] [20 Cal.Rptr. 772]; *Flores* v. *Los Angeles Turf Club, Inc.*, 55 Cal.2d 736, 746-747 [6-9] [13 Cal.Rptr. 201, 361 P.2d 921]; *Larwood Co.* v. *San Diego Fed. Sav. & Loan Assn.*, 185 Cal.App.2d 450, 453 [4-7] [8 Cal.Rptr. 362]; *People* v. *Coit Ranch, Inc.*, 204 Cal.App.2d 52, 57-58 [1-6] [21 Cal. Rptr. 875]; *Franklin* v. *City of Sacramento*, 204 Cal.App.2d 450, 452 [2] [22 Cal.Rptr. 331]. It is clear that plaintiff's failure to follow the administrative procedure is fatal to his action. No fraud or other circumstances recognized as exceptions to the rule are alleged.

Plaintiff cites *Henry George School of Social Science* v. *San Diego Unified School Dist.*, 183 Cal.App.2d 82 [6 Cal.Rptr. 661]; *Walker* v. *County of Los Angeles*, 55 Cal.2d 626 [12 Cal. Rptr. 671, 361 P.2d 247], *County of Los Angeles* v. *Department of Social Welfare*, 41 Cal.2d 455 [260 P.2d 41], and other cases to the general effect that following the administrative procedure here provided was not a prerequisite to judicial interference. Exactly the contrary was stated in the *Henry George* case. We there held that no administrative procedure had been provided and that there was none to take. In the *Walker* case the board of supervisors did not make an erroneous order. They simply refused to make *any order* whatever. In the *Welfare Department* case it was held that the Welfare Department had no jurisdiction over the subject matter of the controversy. Other authorities cited do not support plaintiff's position in the circumstances here at bar.

The order is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1963.