[No. G027691. Fourth Dist., Div. Three. May 21, 2002.]

CALIFORNIA SLURRY SEAL ASSOCIATION, Plaintiff and Appellant,
v.
DEPARTMENT OF INDUSTRIAL RELATIONS et al., Defendants and
Respondents;
SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS et
al., Interveners and Respondents.

652

654

**COUNSEL**

Musick, Peeler & Garrett, Stuart D. Tochner and Bethany A. Pelliconi for Plaintiff and Appellant.

John M. Rea and Anthony Stefan Mischel for Defendants and Respondents.

Reich, Adell, Crost & Cvitan, Alexander B. Cvitan and Esteban Lizardo for Interveners and Respondents.

**OPINION**

**MOORE, J.**—At the request of a labor organization, the Department of Industrial Relations (the Department) evaluated whether to rescind a 10-year-old prevailing wage determination for slurry seal workers. The Department rescinded the determination upon concluding it no longer represented the prevailing wage. When the Department did so, another preexisting prevailing wage determination, based on a collective bargaining agreement and previously applicable to only a small segment of the industry, became the prevailing wage determination applicable to all Southern California slurry seal workers.

An association of slurry seal contractors filed a petition for a writ of mandate to challenge the rescission. It claimed the Department abused its discretion in rescinding one prevailing wage determination when the net effect was to supplant it with a second prevailing wage determination which did not in fact represent the prevailing wage. The trial court denied the writ

petition, holding the Department had not abused its discretion and the association had failed to exhaust its administrative remedies.

The association appeals, reiterating that the Department abused its discretion, and contending the trial court erred in concluding otherwise and in determining the association had failed to exhaust its administrative remedies. Because we agree the Department did not abuse its discretion in rescinding the first prevailing wage determination, we affirm.

I

FACTS

In 1989, the Department issued General Prevailing Wage Determination No. SC-830-X-70-89-1 (the Slurry Seal Workers' Determination) establishing wage rates for various categories of slurry seal workers. The wage rates ranged from $7.99 to $15.15 for workers in Orange, Riverside and San Bernardino Counties.

Subsequently, the Southern California District Council of Laborers and Laborers' International Union of North America, Highway & Street Stripers, Local 1184, AFL-CIO (the Laborers) requested a wage determination for slurry seal workers based upon the Laborers' collective bargaining agreement. In 1995, the Department granted the request and added slurry seal work into the wage determination affecting the Laborers, then designated as No. SC-23-102-2-96-1 (the Laborers' Determination),[1] at the rate set forth in the Laborers' collective bargaining agreement. Since that time, the Department has published two distinct wage determinations for slurry seal work— the Slurry Seal Workers' Determination and the Laborers' Determination. According to the California Slurry Seal Association (the Association), the Department has periodically increased the slurry seal wage rate in the Laborers' Determination to correspond with increases set forth in the Laborers' collective bargaining agreement. As of 1999, the slurry seal wage rate under the Laborers' Determination was $18.18.

By letter dated March 5, 1999, the Laborers requested the Department to rescind the Slurry Seal Workers' Determination. The Laborers asserted that

---

[1]The identifying number of the wage determination premised in relevant part on the wage rate for slurry seal work as set forth in the Laborers' collective bargaining agreement has changed from time to time. It was No. SC-23-102-2-96-1 initially and No. SC-23-102-2-99-1 at the time of the Department's decision at issue here. The California Slurry Seal Association informs us the identifier was subsequently changed to No. SC-23-102-2-2000-1. The applicable determinations shall be referred to hereinafter collectively as the "Laborers' Determination."

the underpinnings of the 10-year-old determination no longer supported it for numerous reasons and the wage rates contained therein were no longer the prevailing rates. Shortly thereafter, the Association, claiming its contractor members performed nearly 98 percent of all California slurry seal work and employed approximately 95 percent of all California slurry seal workers, sent a letter to the Department, requesting it to conduct a wage survey before taking action on the Laborers' request.

The Department set a hearing on the matter. The Association then sent the Department another letter, in which it reiterated its request for a wage survey and indicated there was a need for review of not only the Slurry Seal Workers' Determination, but the Laborers' Determination as well. The Association subsequently sent further correspondence to the Department in which it more clearly articulated a request for the Department to review both of the determinations. The Department chose to limit the scope of the hearing to a review of the Slurry Seal Workers' Determination.

The hearing took place in December 1999. The Association and the Laborers each submitted evidence. The Association characterizes its evidence as "showing that its members were not paying the rate of $18.18 set forth in the Laborers' . . . Determination."

In February 2000, the Department issued a 20-page memorandum of decision pursuant to which it rescinded the Slurry Seal Workers' Determination because the wage rates set forth therein were not actually prevailing rates. In the memorandum of decision, the Department stated that upon rescission of the Slurry Seal Workers' Determination, slurry seal work would have to be paid in accordance with the Laborers' Determination, which remained in effect. In response to the Association's argument that the Laborers' Determination did not represent prevailing wage either, the Department made several comments. Among other things, it stated that the accuracy of the Laborers' Determination was not the subject of the proceedings then before it, the Laborers' Determination was properly supported by a current collective bargaining agreement and a predetermined federal rate, and Labor Code section 1773 required the Department to fix a rate *not less than* the prevailing rate (implying a higher rate was permissible).

The Association then filed an application for an order to show cause re preliminary injunction and a petition for a writ of mandate to challenge the action of the Department and its director, Stephen J. Smith, in rescinding the Slurry Seal Workers' Determination, with the effect of making the Laborers' Determination apply to the entire Southern California slurry seal industry.

The Laborers filed a motion for leave to intervene, which was granted. The trial court denied both the application for a preliminary injunction and the writ petition. It found that the Department had not abused its discretion in rescinding the Slurry Seal Workers' Determination and that the Association had failed to exhaust its administrative remedies. The Association filed a notice of appeal from the judgment and related orders and rulings.

## II

### DISCUSSION

### A. *Exhaustion of Administrative Remedies*

#### 1. *Background*

In its opposition to the Association's petition for a writ of mandate, the Department said the Association sought to "attack the accuracy" of the Laborers' Determination, but had failed to exhaust its administrative remedies. It stated that the statutory scheme has provided only one method for launching the attack—the filing of a petition pursuant to Labor Code section 1773.4, and the Association had filed no such petition. In ruling on the petition, the trial court found the Association had failed to exhaust its administrative remedies.

The Association appears to interpret this finding as meaning that the trial court was precluded from reaching the merits of any portion of the petition, not just any argument that might be construed as a direct challenge to the Laborers' Determination. The Department does not view it this way. It asserts the finding pertained only to the failure to exhaust administrative remedies with respect to a challenge to the Laborers' Determination, not with respect to a challenge to the rescission of the Slurry Seal Workers' Determination.

The record is unclear. The judgment gives two grounds for denying the writ petition: (1) the Association did not exhaust its administrative remedies; and (2) the Department did not abuse its discretion. It does not specify that the failure to exhaust ground applies only to issues pertaining to the Laborers' Determination itself. While that intention might seem obvious to the Department, because of the way the Department framed its opposition to the writ petition, this is not free from doubt. As the Laborers put it, "the Association presented a petition which focused on the Laborers' Determination, which was not reviewed in the underlying administrative process. As such, the trial court correctly determined that it was unable to reach the

merits of the petition as it was presented by the Association." Under either interpretation, however, the doctrine of exhaustion of administrative remedies does not bar judicial review of the matters the Association raises, as we shall explain.

### 2. *Labor Code provisions*

Labor Code section 1771[2] requires that "not less than the general prevailing rate of per diem wages" be paid on public works projects exceeding $1,000. "The body awarding any contract for public work . . . shall specify in the call for bids for the contract, and in the bid specifications and in the contract itself, what the general rate of per diem wages is for each craft, classification, or type of worker needed to execute the contract." (§ 1773.2.) In order to correctly state the prevailing rate in the call for bids and in the bid specifications, the awarding body shall obtain the requisite information from the Director of the Department of Industrial Relations. (§ 1773.) Certain parties are permitted to challenge the prevailing rate quoted in the call for bids. (§ 1773.4.)

More particularly, section 1773.4 provides in pertinent part: "Any prospective bidder or his representative, any representative of any craft, classification or type of workman involved, or the awarding body may, within 20 days after commencement of advertising of the call for bids by the awarding body, file with the Director of Industrial Relations a verified petition to review the determination of any such rate or rates upon the ground that they have not been determined in accordance with the provision of Section 1773 of this code." This provision clearly establishes the method for challenging a prevailing rate specified in a call for bids. The Department sees the application of section 1773.4 as being even broader, applying in the case before us even when no party sought to challenge the rates set forth in a call for bids.

In support of its position, the Department cites to *Hoffman v. Pedley School Dist.* (1962) 210 Cal.App.2d 72 [26 Cal.Rptr. 109]. In *Hoffman,* a union representative filed a complaint to challenge the wage rate being paid under a public works contract. But he had not filed a section 1773.4 petition challenging the prevailing rate as stated in the call for bids. Rather, the representative omitted that step and simply filed a lawsuit four months after the call for bids was published and two months after a contract for the public work had been signed. His motion for a temporary restraining order to block the expenditure of public funds on the contract was denied, and the appellate

---

[2]All subsequent statutory references are to the Labor Code, unless otherwise indicated.

court affirmed on the basis of failure to exhaust administrative remedies. Clearly, the statute was designed to protect against exactly the sort of challenge the union representative brought. (*Hoffman*, at p. 75.) As the court there explained, the statutory "procedure is reasonably prompt and efficacious and eliminates unconscionable delays in getting public work done." (*Id.* at p. 76.) It sets forth a particular manner and a specific period of time in which a challenge may be made, and limits the number of days for the Department to render its decision. The purpose is for the rates as determined by the Department in response to the petition to be included in the contract, so the work thereunder can be performed promptly. (*Id.* at pp. 75-76; § 1773.4.)

But in the case before us, there was no call for bids and the Association does not seek to undo any contract for public work. While the section 1773.4 procedures dictate the manner for challenging a wage rate quoted in a call for bids, they do not specify the procedures to be followed in a situation such as this, where the Department had already undertaken the review of the prevailing rate for slurry seal work in response to the informal request of another party. Furthermore, we observe the Department did not require the Laborers to file a section 1773.4 petition in bringing their challenge.

### 3. *Department proceedings*

The Laborers are the ones who initiated these proceedings, not the Association. They are the ones who chose to challenge the prevailing rate established by the Slurry Seal Workers' Determination. They did not follow section 1773.4 in commencing that challenge. There was no call for bids at issue and the Laborers filed no petition. They sought the Department's review of the Slurry Seal Workers' Determination by the simple mechanism of a two-page letter requesting rescission. The Association, playing by the same rules as the Laborers, sent the Department a letter of its own requesting the Department to conduct a wage survey before taking action on the matter. The Department, in its discretion, was receptive to the letter-writing method of challenge and notified the parties of its intent to hold a hearing.

Two weeks later, the Association sent the Department a supplemental letter, stating that a hearing limited to the issue whether to rescind the Slurry Seal Workers' Determination would not resolve the problems with the Department's prevailing wage determinations pertaining to slurry seal work. The Association noted that the apposite prevailing wage determinations included both the Slurry Seal Workers' Determination and the Laborers' Determination and that "none of the rates listed in either of those determinations correctly reflect[ed] the current prevailing wages for slurry seal

workers in California." In effect, this letter was a request, made in the same form and manner as that utilized by the Laborers to challenge the Slurry Seal Workers' Determination, for the Department to reevaluate the Laborers' Determination at the same time as it reevaluated the Slurry Seal Workers' Determination.

About three months later, the Department sent a formal notice rescheduling the hearing date and detailing the type of evidence the parties should be prepared to present. Absent was any indication that the Department was going to entertain the Association's request as it had the Laborers' request. Consequently, the Association sent further correspondence to the Department in which the Association requested clarification concerning the scope of the hearing "because there [were then] two prevailing wage determinations that ostensibly [applied] to slurry seal workers in Southern California"—the Slurry Seal Workers' Determination and the Laborers' Determination, the latter allegedly inapplicable to 98 percent of all slurry seal work performed in California. The Association asserted it was "not possible to make a decision on the rescission of [the Slurry Seal Workers' Determination] without consideration of whether the [Laborers' Determination] correctly [listed] the prevailing wage for slurry seal workers." The Association further claimed that "since neither of these wage determinations correctly [listed] the prevailing wage for slurry seal workers, a 'rescission' without a modification would be arbitrary and capricious."

After some discussion between the Association and the Department, the Department sent the Association a letter confirming the scope of the hearing. In its letter, the Department's hearing officer reiterated that the participants would be afforded an opportunity to address whether the Slurry Seal Workers' Determination should or should not be rescinded. He also acknowledged that the Association sought modification of that determination, rather than rescission, and stated that the Association would be allowed to present evidence and argument in support of its position. By this letter, the Department made clear that it chose not to entertain the Association's request to review the Laborers' Determination at the same time as it undertook review of the Slurry Seal Workers' Determination.

No one challenges the Department's discretion in making this choice. Nonetheless, we can see no more the Association could have done to encourage the Department to consider the broader prevailing rate issues as part of the review process it had already undertaken. As an integral part of the proceedings, the Association raised the issue of modification of the Slurry Seal Workers' Determination, pointing out that rescission without

modification could result in the Laborers' Determination becoming applicable to the entire Southern California slurry seal industry. We can see no reason why the Association would have been required to find a call for bids to challenge in order to draw this matter to the Department's attention, when the matter was, in essence, already pending before it.[3]

Moreover, before the Slurry Seal Workers' Determination was rescinded, the Association had no reason to file a petition challenging the wage rates contained in the Laborers' Determination. The Laborers' Determination was not applicable to the Association's members until the Slurry Seal Workers' Determination was rescinded without modification. Only then did the Laborers' Determination become a matter of concern to the Association. The Association tried to anticipate this result by drawing the matter to the Department's attention before the situation arose, but to no avail.

### 4. *Issues on appeal*

Perhaps more importantly, the Association is not seeking rescission or modification of the Laborers' Determination; it is attacking the Department's decision to rescind the Slurry Seal Workers' Determination without modification, under the totality of the circumstances. The Association frames one legal issue: Did the Department violate statutory mandates, and thus abuse its discretion, in rescinding the Slurry Seal Workers' Determination instead of modifying it to reflect the wage rate actually prevailing, when doing so had the effect of making the preexisting Laborers' Determination applicable to the entire Southern California slurry seal industry?

Neither the Department nor the Laborers contend judicial review of the power of the Department to rescind the Slurry Seal Worker's Determination without modification is barred by the doctrine of exhaustion of administrative remedies. And the scope of the Department's power in this regard is the thrust of this appeal. There is no question the Association's challenge to the Department's compliance with relevant Labor Code provisions in the rescission of the Slurry Seal Workers' Determination is subject to judicial review.

---

[3]Nonetheless, after it filed its petition for a writ of mandate in the proceedings below, the Association filed petitions challenging the rates for slurry seal work quoted in the calls for bids published by three separate awarding bodies. The Department denied each of those petitions. The Association then filed a petition for a writ of mandate in Riverside County Superior Court (*California Slurry Seal Assn. v. Department of Industrial Relations* (Super. Ct. Riverside County, 2001, No. RIC 350514)), challenging those three denials. The writ petition was denied by judgment filed April 9, 2001.

### B. Substantive Issues

#### 1. Introduction

■ The Department's authority pertaining to prevailing wage determinations is quasi-legislative and it has legislative discretion with respect to such decisions. (*Pipe Trades Dist. Council No. 51 v. Aubry* (1996) 41 Cal.App.4th 1457, 1467-1468 [49 Cal.Rptr.2d 208].) The Association here seeks a writ of mandate compelling the Department to exercise that discretion in a certain way. ■ But " 'mandamus cannot be applied to control discretion as to a matter lawfully entrusted to a governmental agency. [Citation.]' " (*Id.* at p. 1468.) " 'Mandate may lie to *compel* an exercise of discretion but not to *control* it, i.e. to order its exercise in a particular manner [citation], unless discretion can be lawfully exercised only one way under the facts [citation].' (Italics in original.)" (*Id.* at p. 1469.) Our " 'judicial power relative to legislative acts is severely circumscribed.' [Citation.]" (*Ibid.*)

■ We independently review issues of law involving the Department's decision pertaining to the prevailing wage for slurry seal workers. (*International Brotherhood of Electrical Workers v. Aubry* (1996) 41 Cal.App.4th 1632, 1635-1636 [49 Cal.Rptr.2d 759].) "We will only overturn the [Department's] quasi-legislative decision if it is 'arbitrary or capricious' or in conflict with the clear terms of the [Department's] statutory mandate. [Citations.]" (*Id.* at p. 1636.)

#### 2. Labor Code section 1770 et seq.

■ The Association claims the Department violated the applicable statutory provisions, and thus abused its discretion, when it rescinded the Slurry Seal Workers' Determination while leaving the Laborers' Determination in place to fill the void. It cites to section 1770 et seq.

Section 1770 mandates that "[t]he Director of the Department of Industrial Relations shall determine the general prevailing rate of per diem wages in accordance with the standards set forth in Section 1773, and the director's determination in the matter shall be final except as provided in Section 1773.4." The Association maintains that, in making the Laborers' Determination applicable to the entire Southern California slurry seal industry, the Department contravened the mandates of both section 1773 and related section 1773.9.

#### 3. Labor Code section 1773

With respect to prevailing rates, section 1773 provides in pertinent part: "In determining the rates, the Director of Industrial Relations shall ascertain

and consider the applicable wage rates established by collective bargaining agreements and the rates that may have been predetermined for federal public works, within the locality and in the nearest labor market area. Where the rates do not constitute the rates actually prevailing in the locality, the director shall obtain and consider further data from the labor organizations and employers or employer associations concerned, including the recognized collective bargaining representatives for the particular craft, classification, or type of work involved. The rate fixed for each craft, classification, or type of work shall be not less than the prevailing rate paid in the craft, classification, or type of work."

The Association contends the Department violated this provision by rescinding the Slurry Seal Workers' Determination, rather than modifying it, and thereby requiring the entire Southern California slurry seal industry to pay the $18.18 wage rate listed in the Laborers' Determination, when that was not a prevailing wage. On a careful reading of section 1773, however, we disagree.

Section 1773 first requires the Department to "ascertain and consider the applicable wage rates established by collective bargaining agreements . . . ." It did so. It determined there was no current collective bargaining agreement setting rates for slurry seal workers per se, but observed that slurry seal work was included in certain broader worker classifications covered by the Laborers' collective bargaining agreement.

Assuming the Association was correct and the rates set forth in the Laborers' collective bargaining agreement did not actually prevail in the locality, or adopting the Department's viewpoint that there was no applicable collective bargaining agreement at all, section 1773 next directed the Department to consider additional data. Section 1773 continues: "Where the rates do not constitute the rates actually prevailing in the locality, the director shall obtain and consider further data from the labor organizations and employers or employer associations concerned . . . ." This is exactly what the Department did. Before the hearing, the Department sent the parties a formal notice stating they should be prepared to present information pertaining to slurry seal work, including but not limited to: (1) the name, location, owner, type and duration of each public and private project performed in the preceding 12 months in specified geographic areas; (2) peak employment data from each public and private project worked in the preceding 12 months in the specified geographic areas; (3) information regarding trust fund or employer-paid benefits for employees on each project; and (4) payroll documents related to each project. In response, both parties

provided their evidence to the Department and the Department considered the same. Thus, the Association has not demonstrated any failure on the part of the Department to follow the mandates of section 1773.

4. *Labor Code section 1773.9*

The methodology the Director of Industrial Relations is required to utilize in determining the prevailing wage rate is set forth in section 1773.9, subdivision (b). (§ 1773.9, subd. (a).) At issue is the following portion of subdivision (b): "The general prevailing rate of per diem wages includes all of the following: [¶] (1) The basic hourly wage rate being paid to a majority of workers engaged in the particular craft, classification, or type of work within the locality and in the nearest labor market area, if a majority of the workers is paid at a single rate. If no single rate is being paid to a majority of the workers, then the single rate being paid to the greatest number of workers, or modal rate, is prevailing. If a modal rate cannot be determined, then the director shall establish an alternative rate, consistent with the methodology for determining the modal rate, by considering the appropriate collective bargaining agreements, federal rates, rates in the nearest labor market area, or other data such as wage survey data."

First, the Association argues section 1773.9 "prohibit[s] the Department from maintaining wage determinations that do not reflect the wage rates that are actually being paid to a majority or the greatest number of workers performing work in any given classification." But the Association fails to recognize that section 1773.9 provides a step-by-step *methodology* for determining the prevailing rate and that all appearances are that the Department followed the individual steps as required.

Step one required the Department to determine whether a basic hourly wage rate was being paid to a majority of workers. It determined this was not the case. In fact, based on the certified payroll records the Association submitted, the Department found the Association's members paid their 200-plus slurry seal employees more than 100 different basic hourly rates. The Association does not challenge this finding.

Step two provided that, if no single rate was being paid to the majority of workers, then the single rate being paid to the greatest number of workers (the "modal" rate) would be the prevailing rate. The Department determined that the information provided indicated there was no statistically meaningful modal rate, either. Despite the unwieldy array of hourly rates paid by the members of the Association, the Association argues the Department abused its discretion in failing to set the prevailing wage at the rate paid to the

greatest number of workers. It contends that "if there is a single wage rate that is common to as few as two or three employees, that rate could constitute a modal rate even if 100 different rates are paid to the remaining employees performing slurry seal work."

Yet the Association, on appeal, identifies no single rate common to as few as two or three employees in a given classification. It appears the Association, when making its presentation to the Department, asserted there was a determinable modal rate for shuttlepersons in certain counties and for squeegeepersons in other counties. In rejecting the assertion, the Department explained at length why the documentation presented in support of it was inconsistent and unreliable. Among other things, the Department cited the testimony of one Association member to the effect that its certified payroll records did not in fact accurately reflect the basic hourly wage paid to its employees. In addition, the Department pointed out that some of the Association's members had failed to produce records for wages paid on private projects, and some had not submitted records for the full 12-month period requested. Given these and other cited irregularities in the evidence, we cannot conclude the Department abused its discretion in determining there was no ascertainable modal rate.

Since no modal rate could be determined, the final step under section 1773.9, subdivision (b)(1) was for the Department to "establish an alternative rate . . . by considering the appropriate collective bargaining agreements, federal rates, rates in the nearest labor market area, or other data such as wage survey data." It did indeed consider additional information, as required. As already stated, the Department considered whether there was any applicable collective bargaining agreement, and concluded there was none, except to the extent the Laborers' collective bargaining agreement included slurry seal workers within certain classifications. It also considered whether there were any relevant federal rates. It noted that the United States Department of Labor (DOL) did not have a separate determination for Southern California slurry seal workers, but that those workers were covered by DOL's General Decision No. CA990033. The Department further explained that General Decision No. CA990033 established the rates contained in the Laborers' collective bargaining agreement as prevailing. In addition, the Department considered the information provided by the Association and the Laborers. It fully complied with the section 1773.9 requirements concerning the consideration of information in the decisionmaking process.

The Association disagrees. It argues section 1773.9 required the Department to conduct a wage survey and it seeks a writ of mandate compelling the

Department to perform a survey of the wages the Association's members were paying as of December 1999. The Association contends that because the collective bargaining agreement applied to only a fraction of the industry, the wage rates therein did not represent the prevailing wage and the Department was not at liberty to base its prevailing wage determination thereon. The Association then leaps to the conclusion a wage survey was required because a prevailing wage determination could not be based on the collective bargaining agreement. As the Association sees it, wage surveys are mandatory when a modal rate cannot be ascertained from appropriate collective bargaining agreements.

But that very simply is not what the statute says. When no modal rate can be determined, section 1773.9, subdivision (b)(1) requires the Department to consider other information, including, inter alia, collective bargaining agreements, "or other data such as wage survey data." The statute clearly uses disjunctive language, inasmuch as it contains the word "or." In other words, it does not *require* a wage survey, but gives the Department the discretion to consider one. (Cf. *Pipe Trades Dist. Council No. 51 v. Aubry, supra,* 41 Cal.App.4th at p. 1467 [language of § 1773 makes clear Department has substantial discretion as to sources it consults in determining prevailing wage].) Indeed, the Association cites no case construing the statute as requiring a wage survey.

While section 1773.9 does not require consideration of a wage survey, it encourages consideration of appropriate collective bargaining agreements. The Association, however, maintains it was unconstitutional for the Department to base its prevailing wage determination on a wage rate established by a collective bargaining agreement applicable to a fraction of the industry. As the Association views it, by doing so, the Department delegated to the Laborers its responsibility to maintain prevailing wage determinations in accordance with the applicable Labor Code provisions. (See *Independent Roofing Contractors v. Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 354 [28 Cal.Rptr.2d 550] [delegation of legislative rulemaking authority to private parties with pecuniary interest may be unconstitutional].)

But as we have explained, the record indicates the Department complied with the statutory mandates in determining the prevailing wage in this matter. The Department did not delegate its responsibility. Rather, it exercised its statutory discretion to consider certain information, including the collective bargaining agreement, in its evaluation process. The final determination was that of the Department, not the Laborers. (See *Independent Roofing Contractors v. Department of Industrial Relations, supra,* 23

Cal.App.4th at pp. 354-355 [no unconstitutional delegation of authority when nothing in record suggests that Department failed to exercise legislative discretion in decision to eliminate wage determination or that private party dictated decision].)

### 5. *Additional arguments*

The Association also contends the Department's own summary of the evidence proves the Association's point—that $18.18 was not the prevailing wage, because it was not what the Association members were paying. The Department summarized the wage information provided by each of eight Association members. As stated above, the Department found the Association's members paid their slurry seal employees more than 100 different basic hourly rates. While the Department's summary of those rates shows that the members collectively paid at many rates less than $18.18 for various worker classifications, it also shows that six out of eight of the members paid at certain rates higher than $18.18. A number of the rates were considerably higher. Indeed, one Association member paid up to $36.88 for certain unidentified classifications.

The Department considered more than 100 different basic hourly rates. As it did so, it grappled with incomplete and inconsistent evidence. At the end of the day, it concluded there was insufficient evidence upon which to base a revised determination. We can hardly substitute our judgment for that of the Department and say what figure it should have picked. (*California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212-213 & fn. 30 [157 Cal.Rptr. 840, 599 P.2d 31].)

Even though the Association does not propose a figure either, it insists the Department abused its discretion in concluding the Slurry Seal Workers' Determination was obsolete. In an effort to cast blame on the Department, the Association suggests the reason for any obsolescence was the failure of the Department to do a wage survey in the years since the adoption of the Slurry Seal Workers' Determination. Yet at the same time, it attempts to suggest that the determination was not in fact obsolete. This is a stunning suggestion, considering the Association states in its opening brief that the evidence it submitted showed "most [of its] members were paying their employees wage rates that exceeded those in the Slurry Seal [Workers'] Determination." It also admitted in prehearing correspondence with the Department that none of the rates listed in the Slurry Seal Workers' Determination correctly reflected prevailing wage rates for California slurry seal workers. The Association's change of position on this point is untenable.

### 6. Conclusion

"Though the Department must not determine a prevailing wage before considering relevant collective bargaining agreements, prevailing wages on federal projects, and other pertinent information, nothing in the statutory scheme prevents it from determining that the information provided to it is insufficient to support a wage determination, or that new information has eliminated the basis for an existing determination. Appellant['s] claim that the Department's act was arbitrary for failure to discover a basis for a different determination is therefore without merit." (*Independent Roofing Contractors v. Department of Industrial Relations, supra,* 23 Cal.App.4th at p. 359 [Department's rescission of outdated prevailing wage determination upheld].)

The point of the matter is that the Department concluded the evidence clearly showed the rates set forth in the Slurry Seal Workers' Determination, then over 10 years old, were no longer prevailing wage. The issue was whether to rescind that determination, and the Department exercised its discretion to do so. True, that had the effect of making $18.18 the prevailing rate, because the Laborers' Determination then became the only prevailing wage determination for Southern California slurry seal workers remaining in effect. But the Department is empowered, by section 1773, to fix a rate "for each craft, classification, or type of work [that] shall be *not less than* the prevailing rate paid in the craft, classification, or type of work." (Italics added.) This appears to be exactly what the Department did.

The Association insists the Department violated "the statutory mandate of section 1773, which requires that the [Department] not simply accept a rate stated in a collective bargaining agreement at face value, but also determine whether the rate in question is 'actually prevailing' before authorizing it. [Citations.] [Fn. omitted.]" (*International Brotherhood of Electrical Workers v. Aubry, supra,* 41 Cal.App.4th at p. 1639.) The Association overlooks two points. First, the issuance of the Laborers' Determination is not at issue. The decision to issue that determination was made years ago. Second, to the extent we construe the Laborers' Determination as newly establishing the prevailing rate, in the sense that it is being newly applied to the largest segment of the industry, it remains supported by a current collective bargaining agreement and a predetermined federal rate. Moreover, the Department considered the additional data supplied by the Association and the Laborers and followed the requisite statutory methodology in arriving at its result. The data supplied by the Association very simply did not compel the Department to select a figure other than the one contained in the Laborers' Determination. At any rate, if indeed the Association is correct and $18.18

did not represent the prevailing wage at the time the Department rendered its decision, it is a result that might have been avoided had the Association provided more complete and carefully prepared documentation.

## III

### REQUESTS FOR JUDICIAL NOTICE

The Association filed a request for judicial notice of certain documents prepared by the Department. The request is granted. (Evid. Code, § 452, subd. (h).) This court will take notice of the documents attached to the Association's request filed on April 13, 2001. The Department filed a request for judicial notice of the judgment filed in *California Slurry Seal Assn. v. Department of Industrial Relations* (Super. Ct. Riverside County, 2001, No. RIC 350514) and a supplemental request for judicial notice. The request as supplemented is granted. (Evid. Code, § 452, subd. (d).) This court will take notice of the document attached to the supplemental request for judicial notice the Department filed on March 8, 2002.

## IV

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.