[No. A114636. First Dist., Div. Four. July 30, 2007.]

SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 104, Plaintiff and Appellant, v.
JOHN M. REA, as Acting Director, etc., Defendant and Respondent;
SOLANO COUNTY ROOFING, INC., Real Party in Interest and Respondent.

1072

COUNSEL

Altshuler, Berzon, Nussbaum, Rubin & Demain, Altshuler Berzon, Peter D. Nussbaum and Eileen B. Goldsmith for Plaintiff and Appellant.

Carter, Carter & Fries and James A. Carter for Mechanical Contractors Association of Northern California, Inc., as Amicus Curiae on behalf of Plaintiff and Appellant.

Vanessa L. Holton and Gary J. O'Mara for Defendant and Respondent.

Littler Mendelson, Richard N. Hill and Gayle L. Gonda for Real Party in Interest and Respondent.

OPINION

**REARDON, J.**—Appellant Sheet Metal Workers International Association, Local Union No. 104 (union) filed an action for mandate, administrative mandate and declaratory relief challenging a decision of respondent John M. Rea, as Acting Director of the Department of Industrial Relations (DIR), interpreting California's prevailing wage law in favor of respondent Solano County Roofing, Inc. (SCR). (See Lab. Code,[1] §§ 1770–1781.) The trial court sustained demurrers on all causes of action, finding that the union's action was barred for several reasons, including its failure to exhaust its administrative remedies. The union appeals the subsequent judgment dismissing its petition,[2] challenging inter alia the trial court's finding that the action was

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] The notice of appeal actually purports to appeal from an order clarifying an earlier order sustaining a demurrer. An order sustaining a demurrer without leave to amend is not an appealable order. (*Beazell v. Schrader* (1963) 59 Cal.2d 577, 579–580 [30 Cal.Rptr. 534, 381 P.2d 390]; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 113, pp. 178–179.) As an order sustaining a demurrer is not a judgment, an order clarifying such an order does not constitute an order after judgment. (See Code Civ. Proc., § 904.1, subd. (a)(2).) We have no jurisdiction to consider the merits of an appeal from a nonappealable order. In such circumstances, we typically dismiss the purported appeal. (*Beazell v. Schrader, supra*, 59 Cal.2d at pp. 579–580; see 9 Witkin, Cal. Procedure, *supra*, Appeal, § 113, pp. 178–179.) However, at the request of our clerk, the union obtained a judgment in this matter on November 22, 2006. Notice of entry of that judgment was given on November 27, 2006. We may liberally construe the June 13, 2006 notice of appeal from the nonappealable order to be an appeal from the November 22, 2006 judgment. (See former Cal. Rules of Court, rules 1(a)(2) [now rule 8.100(a)(2)], 2(e) [now rule 8.104(e)].) We deem this notice of appeal to be filed immediately after the November 22, 2006 judgment and thus, find that the appeal from this judgment is timely. (See *id.*, former rule 2(e) [now rule 8.104(e)(2)].)

barred because the union failed to exhaust its administrative remedies.[3] (See former § 1742; § 1773.4; Code Civ. Proc., §§ 1060, 1086, 1094.5.) We affirm the judgment.

## I. FACTS

The Director of the state DIR determines the general prevailing rate of per diem wages for each craft, classification or type of worker needed to execute public works contracts. (§§ 1770, 1771, 1773.) These prevailing rates vary depending on where the work is done, the type of work, and the time when the work is advertised for bid.[4] (§ 1773.2.) Statutory law and public works contracts require that contractors and subcontractors on public works projects pay these prevailing rates to covered workers. Contractors and subcontractors are deemed to have constructive notice of the prevailing wage rates, even if the awarding body fails to specify the relevant worker classifications in the contracts. (See *Division of Lab. Stds. Enforcement v. Ericsson Information Systems, Inc.* (1990) 221 Cal.App.3d 114, 125–127 [270 Cal.Rptr. 75] (*Ericsson*); see also *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 982, 986–988 [4 Cal.Rptr.2d 837, 824 P.2d 643].) Prevailing rates and related scope of work provisions for the affected craft, classification or type of worker are regularly posted on the DIR's Web site by its Division of Labor Statistics and Research (DLSR).[5]

Between 2002 and 2004, real party in interest and respondent SCR—a roofing subcontractor regularly working on public works projects—installed metal roofs on three such projects in San Mateo and Santa Clara Counties. None of the awarding bodies specified prevailing wage rates other than those posted by the DLSR for the work performed by SCR. At all relevant times,

---

[3] We granted the request of Mechanical Contractors Association of Northern California, Inc., to file an amicus curiae brief in support of the union's position on some of the issues raised in this appeal. Although we permitted Rea and SCR to respond to this amicus curiae brief, they did not do so.

[4] Rea requests that we take judicial notice of nine exhibits. Two of these exhibits reflect the DIR Director's prevailing wage determinations for San Mateo and Santa Clara Counties. We may take judicial notice of official acts of an executive department of this state. (See Evid. Code, §§ 452, subd. (c), 459, subd. (a).) As we find these two exhibits to be relevant to the resolution of this appeal, we take judicial notice of them. In all other respects, the request for judicial notice is denied. (See *id.*, § 350 [only relevant evidence is admissible].)

[5] The DLSR is responsible for collecting, compiling and presenting facts and statistics relating to the condition of labor in California for the DIR. (§ 150.)

the scope of work provisions posted on the DLSR Web site for the craft of roofer in these counties included specific references to metal roofing, based on language drawn from the collective bargaining agreements of the local roofers unions. At the same time, the scope of work posted by the DLSR for the craft of sheet metal worker in these two counties included "all . . . metal work." SCR classified its workers installing sheet metal roofs as roofers on each of these projects and paid them the local prevailing wage for roofers. In both counties, the prevailing rate for sheet metal workers was higher than that for roofers.

The union[6] did not challenge the prevailing rates on any of these three projects within the 20-day period after the call for bids as specified by statute. (See § 1773.4.) Instead, it requested rate of pay determinations for each of these three projects *after* the 20-day period had expired and after SCR had begun work on each project. The union asked the DIR Director to determine the proper classification of the workers installing metal roofing on these three projects. Before SCR's work on each project was completed, then Acting Director Chuck Cake issued a rate of pay determination finding that the proper classification for this work on the bid advertisement date for each project was that of sheet metal worker (HVAC).

Armed with these rate of pay determinations, the union asked the DIR's Division of Labor Standards Enforcement (DLSE)[7] to investigate whether SCR should have classified its workers as sheet metal workers rather than roofers on each of these three public works projects. A DLSE Labor Commissioner ruled that SCR had improperly classified workers installing metal roofing as roofers rather than sheet metal workers, paying these workers less than the general prevailing rate of per diem wages for sheet metal workers in violation of prevailing wage requirements. Accordingly, the Labor Commissioner imposed civil wage and penalty assessments against SCR for failing to pay the general prevailing rate of per diem wages to the affected workers on these three public works projects.[8] These three

---

[6] The union is a labor organization representing approximately 8,000 sheet metal workers in Northern California.

[7] The DLSE is charged with enforcing the prevailing wage laws on public works contracts for the DIR. (See §§ 79, 1741, 1771.)

[8] In fact, the DLSE imposed six civil wage and penalty assessments, but only three of them are before us on appeal.

assessments totaled almost $200,000, in addition to almost $150,000 in liquidated damages. (See former § 1742.1; §§ 1775, 1813.)

SCR sought review of these civil wage and penalty assessments by the then Acting DIR Director—respondent John M. Rea[9]—who conducted a hearing on the matter. He found that at the time the three public works contracts were made, metal roofing installation work overlapped both the roofing and sheet metal work classifications in the two affected counties. Confronted with this ambiguity, Rea concluded that SCR properly relied on the express guidance provided by the published general prevailing wage determination for either classification. (See former § 1742.)

The DIR Director regarded the obligations under the three contracts as fixed by the prevailing rate determinations in effect on the respective bid dates. He ruled that because the 20-day period after the call for bids had elapsed on each project by the time that the union requested the rate of pay determinations, any rate change determinations that might have clarified any ambiguities in the published prevailing rate determinations would have only prospective effect.[10] (See § 1773.6.) In October 2005, Rea dismissed these three civil wage and penalty assessments imposed against SCR.

In November 2005, the union filed a petition for writ of mandate against Rea in his capacity as Acting Director of the DIR. In January 2006, the union filed a first amended petition, alleging causes of action for mandate, administrative mandate and declaratory relief. (See Code Civ. Proc., §§ 1060, 1085, 1094.5.) In it, the union challenged Rea's decision overturning the three civil wage and penalty assessments. It sought a peremptory writ of mandate or administrative mandate compelling Rea to set aside his decision and to issue a new decision affirming the civil wage and penalty assessments imposed by the DLSE, as well as a declaratory judgment precluding Rea from applying a similar analysis in future cases.

Rea and SCR demurred to the first amended petition, contending inter alia that the union had no standing to pursue the action for administrative mandate and had a plain, speedy remedy at law to correct any alleged statutory violations on future projects. On May 17, 2006, the trial court

---

[9] According to the DIR's Web site, Rea has served as Acting DIR Director since January 2004. (See <http://www.dir.ca.gov/dirnews/2005/ir2005%2D2.html> [as of July 30, 2007].)

[10] In January 2007, we asked the parties to submit letter briefs addressing this substantive question. We had the benefit of the parties' responses to this request when resolving the procedural issues determined by the trial court.

entered two separate orders on the two demurrers. Both sustained the demurrers to the administrative mandate cause of action without leave to amend, but reached different results on whether the union was also barred from bringing a petition for traditional mandate. (See former § 1742, subd. (c), § 1773.4; see also Code Civ. Proc., §§ 1085, 1086, 1094.5.)

In June 2006, the union sought a clarification of the rulings on the two demurrers. The trial court filed an order clarifying its May 2006 orders, sustaining *both* demurrers on *all* causes of action. It found that the union had no standing to seek a writ of administrative mandate; that it lacked a beneficial interest sufficient to have standing to seek a traditional writ of mandate; and that it had failed to exhaust its administrative remedies. (See former § 1742; Code Civ. Proc., §§ 1060, 1085, 1094.5.) In November 2006, judgment entered in favor of Rea and SCR.

## II. PRELIMINARY CONSIDERATIONS

### A. *Statutory Overview*

██ A brief review of the backdrop of administrative decisions setting and enforcing the general prevailing rate of per diem wages for workers on public works projects sets the stage for our resolution of this appeal. To effect the public policy in favor of enforcing minimum labor standards, conditions of employment on publicly financed construction projects are governed by California's prevailing wage law. (See §§ 90.5, 1720–1861; *Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 985; *Independent Roofing Contractors v. Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 351 [28 Cal.Rptr.2d 550] *(Independent Roofing); Pipe Trades Dist. Council No. 51 v. Aubry* (1996) 41 Cal.App.4th 1457, 1465 [49 Cal.Rptr.2d 208] *(Pipe Trades)*.) A contractor or subcontractor on a public works project must pay its workers the prevailing rate of wages. (§§ 1771, 1773, 1773.2; *Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 981; *Pipe Trades, supra,* 41 Cal.App.4th at p. 1465.) The general prevailing rate of per diem wages is set by the DIR Director for each locality where the work is to be performed for each craft, classification or type of worker needed to execute a public works contract, based on a statutorily mandated methodology. (§§ 1770, 1773, 1773.1, 1773.9, subds. (a), (b)(1); see *California Slurry Seal Assn. v. Department of Industrial Relations* (2002) 98 Cal.App.4th 651, 664 [121 Cal.Rptr.2d 38] *(Slurry Seal); Ericsson, supra,* 221 Cal.App.3d at p. 118; see also Cal. Code Regs., tit. 8, § 16200 (hereafter Regs.).)

Section 1773 requires that a body awarding a public works contract ascertain the prevailing rates from the DIR. (§ 1773; *Ericsson, supra,* 221 Cal.App.3d at p. 118.) The awarding body must specify the prevailing rate for each craft, classification or type of worker needed to execute the contract in its call for bids, in the bid specifications and in the contract itself. (§ 1773.2.) Alternatively, the awarding body may include in those documents a statement that copies of the prevailing rates are on file at its principal office, where they are available for review by any interested party. (§§ 1773, 1773.2; *Ericsson, supra,* 221 Cal.App.3d at p. 119; see *Slurry Seal, supra,* 98 Cal.App.4th at p. 658; see also *Hoffman v. Pedley School Dist.* (1962) 210 Cal.App.2d 72, 74 [26 Cal.Rptr. 109].) Any representative of any craft, classification or type of worker involved may petition the DIR Director to review the determination of the prevailing rate on the ground that they were not determined in accordance with section 1773. This review must be sought within 20 days after the awarding body issues its call for bids.[11] (§ 1773.4; see *Independent Roofing, supra,* 23 Cal.App.4th at p. 351; see also *Pipe Trades, supra,* 41 Cal.App.4th at p. 1465.)

## B. *Rate of Pay Determination*

The DIR both issues prevailing rate determinations and enforces the announced prevailing rates. (See §§ 1741, 1773.) Our resolution of the issues in this appeal turns, in part, on the proper characterization of each underlying rate of pay determination as more akin to a prevailing rate determination or more like an enforcement procedure. Statutory law does not provide an express answer to this question. Having considered the issue, we conclude that a rate of pay determination is more like a prevailing rate determination than an enforcement procedure, for several reasons.

First, a rate of pay determination is made by the same official charged with making a prevailing rate determination—the DIR Director.[12] (See §§ 1773; see also Regs., § 16302.) By contrast, enforcement of a prevailing wage is made by the Labor Commissioner, as an officer of the DLSE branch of the DIR, by means of a civil wage and penalty assessment. (See §§ 1741, subd. (a), 1775, subds. (a)(2)(A), (D), (c).) Second, although a rate of pay determination may—as it did here—precede an enforcement proceeding, one

---

[11] The applicable regulations use different terms than the statute, but both clearly permit a labor union to petition for administrative review of a prevailing wage determination. (See Regs., §§ 16000, 16302.)

[12] The DIR regulations also permit some prevailing rate determinations to be sought from and made by the Chief of the DLSR. (See Regs., §§ 16202, subd. (b), 16301, 16302.)

need not obtain a rate of pay determination in order to seek enforcement of the prevailing wage law. As such, a rate of pay determination is not an essential part of the DIR's enforcement process. (See § 1775.) Third, Rea himself—in the decision reviewing the civil wage and penalty assessments underlying this appeal—characterized his predecessor's rate of pay determination as a change in the prevailing rate, suggesting that the rate of pay determination is part of the prevailing rate determination scheme. An administrative agency's interpretation of the statutes that the Legislature charges it to enforce—while not controlling—is entitled to great weight. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388 [241 Cal.Rptr. 67, 743 P.2d 1323]; *American Nat. Ins. Co. v. Low* (2000) 84 Cal.App.4th 914, 924 [101 Cal.Rptr.2d 288].) Taken together, these factors satisfy us that a rate of pay determination is more similar to a prevailing rate determination than it is to an enforcement ruling. With this understanding of the manner in which a rate of pay determination fits within the statutory scheme, we turn to the procedural issue presented in this appeal.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. *Applicability of Section 1773.4*

By law, a petition seeking the DIR Director's review of whether the prevailing rate specified for a public works contract was determined in accordance with section 1773 must be filed within 20 days after commencement of advertising of the call for bids by the awarding body. (§ 1773.4; see *Independent Roofing, supra,* 23 Cal.App.4th at p. 351; *Pipe Trades, supra,* 41 Cal.App.4th at p. 1465.) Interested parties are entitled to seek such review. (See § 1773.4; *Slurry Seal, supra,* 98 Cal.App.4th at p. 658; *Hoffman v. Pedley School Dist., supra,* 210 Cal.App.2d at p. 74; see also Regs., §§ 16202, subd. (b), 16302.) The union is an interested party permitted to raise such a challenge. (§ 1773.4; *Hoffman v. Pedley School Dist., supra,* 210 Cal.App.2d at pp. 74–75; see Regs., §§ 16000, 16302.) If the 20-day period after the call for bids elapses without a request for review of a prevailing rate to be paid on the proposed contract, the doctrine of exhaustion of administrative remedies bars any later civil action seeking to invalidate the subsequent contract on which those rates were paid. (See *Hoffman v. Pedley School Dist., supra,* 210 Cal.App.2d at pp. 75–76.)

In this matter, the union did not challenge the prevailing rate to be paid to workers on any of the three proposed public works projects within the 20-day

period specified by statute. This failure to exhaust administrative remedies was one ground of the trial court's order sustaining the demurrers, leading to the dismissal of the union's petition. On appeal, the union contends that failure to exhaust administrative remedies pursuant to section 1773.4 does not bar its petition because this provision does not apply in the context of this case.

In support of this claim, the union focuses on the language in section 1773.4 specifying that a challenge to a prevailing rate be made on the ground that it was not determined "in accordance with . . . Section 1773 of this code." It then cites certain language in section 1773[13] setting out some of the information that the DIR Director must consider when ascertaining the actual rate paid for work in any particular craft, classification or type of work, considering rates paid on federal public works projects and those established by applicable collective bargaining agreements. Citing this language in section 1773, the union reasons that the exhaustion requirement of section 1773.4 applies only to a challenge to the *accuracy* of the general prevailing wage rate set by the DIR Director, such as when a union contends that the general prevailing rate of per diem wages was not determined by the proper *methodology*. It asserts that a rate of pay determination seeking which of two indisputably accurate general prevailing wage rates should be applied to a particular type of work does not constitute a challenge to the accuracy of the prevailing rate.

The union's argument is based on its construction of the relevant statutes. Statutory construction is a question of law for us to determine. (*City of Oakland v. Superior Court* (1996) 45 Cal.App.4th 740, 753 [53 Cal.Rptr.2d 120].) We disagree with the union's limited view of the exhaustion of administrative remedies requirement of section 1773.4, for two reasons. First, section 1773 does not state the specific methodology to be used to determine the general prevailing rate of per diem wages—that methodology is set out in section 1773.9. (See *Slurry Seal, supra,* 98 Cal.App.4th at p. 664.) In that provision, the Legislature uses the term "methodology"—a term that does not appear in section 1773. (See § 1773.9, subd. (a).) If the Legislature wanted to

---

[13] Specifically, the union notes this part of section 1773: "In determining the rates, the Director of Industrial Relations shall ascertain and consider the applicable wage rates established by collective bargaining agreements and the rates that may have been predetermined for federal public works, within the locality and in the nearest labor market area. Where the rates do not constitute the rates actually prevailing in the locality, the director shall obtain and consider further data from the labor organizations and employers or employer associations concerned, including the recognized collective bargaining representatives for the particular craft, classification, or type of work involved." (§ 1773.)

limit the application of section 1773.4 to challenges to the DIR Director's *methodology* in setting a prevailing wage in the manner that the union urges that it did, it seems reasonable to assume that it would have referenced section 1773.9 rather than section 1773. It did not do so. Thus, the union's attempt to limit the exhaustion of administrative remedies requirement codified in section 1773.4 to cases involving a challenge to *methodology* is unpersuasive.

Second—and more importantly—the union's citation to the language of section 1773 ignores other language in that provision. In addition to the language that the union cites, section 1773 *also* requires that a prevailing rate be fixed for each craft, classification or type of worker needed to complete a public works contract. (§ 1773.) This statutory requirement runs counter to the union's reasoning in two ways. First, it implies that the director must determine a *single* prevailing rate for each craft, classification or type of worker. (See § 1773.9, subd. (b) [defining "[t]he general prevailing rate of per diem wages" (italics added)].) The overlapping prevailing rates that form the basis of the underlying dispute in this matter conflict in such a manner that no single prevailing rate clearly applied to the work of installing sheet metal roofing. Second, the statutory requirement of a prevailing rate also implies that the determination of such a rate inevitably involves the issue of which craft, classification or type of worker will perform the work that will be compensated at that rate on a public works project in a particular locality. Viewed in this manner, it is clear that the prevailing rate issue and the work classification issues are necessarily intertwined. (See *Ericsson, supra*, 221 Cal.App.3d at p. 128 [whether work covered by prevailing wage law is necessary part of prevailing rate determination process].) As such, the definition of the craft, classification or type of worker is an inherent part of the determination of that craft, classification or type of worker's single proper prevailing rate of per diem wages. (See *Pipe Trades, supra*, 41 Cal.App.4th at p. 1466 [recognizing that prevailing wage and classification issues are necessarily interconnected].)

■ We read section 1773.4 to apply to *any* challenge to a prevailing rate as not properly enacted according to the terms of section 1773, including a challenge that a single prevailing rate was not set for a specific craft, classification or type of work. (See §§ 1773, 1773.4.) ■ Applying section 1773.4 to the case before us, we would thus conclude that the trial court properly ruled that the union's failure to exhaust its administrative remedy by requesting its rate of pay determination within the 20-day period after the call for bids is fatal to its subsequent judicial action challenging the DIR

Director's review of the civil wage and penalty assessments that was based on that rate of pay determination. (See, e.g., *Hoffman v. Pedley School Dist.*, *supra*, 210 Cal.App.2d at pp. 73–77; see also *Slurry Seal, supra*, 98 Cal.App.4th at pp. 658–659.)

The union raises various objections to this result. First, it asserts that it was impossible to know before the bids were opened which contractor would receive the bid and which of two possible prevailing rates—one for sheet metal worker, one for roofer—that it would pay. We disagree. The union had as much access to the work classifications and prevailing rates established by the roofers' local collective bargaining agreements as any contractor did. The DLSR Web site included "metal roofing" within the scope of work for the craft of roofer in San Mateo and Santa Clara Counties, having drawn this definition from the collective bargaining agreements entered into by each local roofers' union. From the DLSR Web site, the union had constructive notice that "metal roofing" was included within the scope of work for the craft of roofer for these localities. (See *Ericsson, supra*, 221 Cal.App.3d at p. 125 [contractor had constructive notice of prevailing rate schedule incorporated into contract].) As such, even *before* a call for bids issued in the three underlying contracts, it had reason to suspect that the overlap between its own craft of sheet metal worker and the craft of roofer might give rise to an application of prevailing rates pursuant to each contract that did not match its view of the proper prevailing rate to be paid to workers installing sheet metal roofing. Once it knew that a call for bids had issued on a public works contract that involved the installation of sheet metal roofing, the union was required to seek DIR review of the prevailing rate to be paid for this work within 20 days of the call for bids if it wanted to ensure that the contractor eventually awarded the contract would pay the prevailing rate for sheet metal workers rather than that paying its workers at the rate for roofers. (See §§ 1773.4, 1773.6.)

Second, the union complains that this interpretation of section 1773.4 would require that it file a challenge on every public works project on which the DIR has established overlapping scopes of work. Again, we disagree. The law does not require the union to wait until a call for bids goes out on a public works contract to seek a rate of pay determination to resolve such a conflict. However, if the union does wait until a public works contract is already underway to raise this objection—if it fails to alert the contractor and the awarding body that it intends to challenge the prevailing rates to be paid to workers pursuant to that contract who fall within the work classification of two different unions—any ruling that it obtains cannot be enforced until the

next such contract is enacted in the locality. (See § 1773.6.) Once the contracts were made, the union might be able to obtain a ruling that the sheet metal worker rate should have been paid for installation of sheet metal roofing, but it cannot enforce that ruling against contractors who had already entered contractual obligations based on a different assumption. Our decision does not require that the union file for a rate of pay determination within 20 days of the call for bids in order to obtain such a rate ruling. We find only that if the union seeks to enforce such a ruling against a specific contractor, it must raise the issue in a timely manner by complying with the terms of section 1773.4.

Third, the union reasons that the dispute before us is indistinguishable from that in *Slurry Seal,* when two unions asked the DIR to resolve whether a particular type of work fell within one union's classification or the other. In that case, an appellate court rejected the DIR's assertion that one union was required to exhaust administrative remedies by bringing its challenge within the time period specified in section 1773.4. (*Slurry Seal, supra,* 98 Cal.App.4th at pp. 658–659.) The facts of that case are clearly distinguishable from those in the case before us. In *Slurry Seal,* "there was no call for bids and the [union did] not seek to undo any contract for public work." (*Id.* at p. 659.) In the case before us, there *were* calls for bids and undoing the three challenged public works contracts is precisely what the union seeks to do. Thus, *Slurry Seal* provides no support for the union.

Finally, the union contends that under another aspect of the *Slurry Seal* decision, it could have sought a rate of pay determination at any time without complying with the requirements of section 1773.4. In fact, it *did* obtain a rate of pay determination without doing so, and without any objection from the DLSE. In its reply brief, the union argues that *Slurry Seal* establishes that section 1773.4 does not apply when the DIR acts in response to an informal request. (See *Slurry Seal, supra,* 98 Cal.App.4th at pp. 659–661.) Again, this aspect of that decision does not apply to our case because of the different contexts of the two cases—*Slurry Seal* being a case that did not seek to undo a contract and the case before us being one that does. (See *id.* at p. 659.)

As we see it, the overarching issue in this matter is not whether the union may *obtain* a rate of pay determination without first challenging the then-unformed public works contract, but whether it may seek to *enforce* that ruling against a contractor who entered into a public works contract that was not challenged within the 20-day period specified in section 1773.4. In such circumstances, the contractor had no notice that the expenses of the contract

might be more than anticipated at the time that the contract was made. (See § 1773.6.) If the union wanted the DIR to enforce a specific prevailing rate for a craft, classification or type of worker required to complete these particular public works contracts, it had to challenge those contracts within 20 days after the call for bids issued. Otherwise, the rate of pay determinations clarifying the ambiguity about whether workers on these projects should have been paid at the prevailing wage rate for sheet workers rather than that for roofers effected a change in the prevailing rate that could not be applied retroactively to change contractual obligations that had been fixed as of the dates that the contractors entered into the underlying contracts. (See *ibid.*) As we are not persuaded by any of the union's arguments to the contrary, we find that the trial court properly applied section 1773.4 in this matter.

## B. *Waiver of Exhaustion Requirement*

In the alternative, the union contends that even if section 1773.4 applies and its failure to exhaust administrative remedies would otherwise bar its writ petition, the trial court should have reached the merits of this case in order to determine important public policy issues that were likely to recur unless addressed by that petition. In essence, the union urges us to waive the exhaustion requirement[14] in the circumstances of this case to prevent the DIR Director from "misapplying" the prevailing wage law in the same manner in future cases.

Although failure to exhaust administrative remedies usually precludes a judicial action, a court may opt to hear a case involving important public policy issues. (See, e.g., *Lindeleaf v. Agricultural Labor Relations Bd.* (1986) 41 Cal.3d 861, 870–871 [226 Cal.Rptr. 119, 718 P.2d 106]; *Action Apartment Assn. v. Santa Monica Rent Control Bd.* (2001) 94 Cal.App.4th 587, 615 [114 Cal.Rptr.2d 412]; *Acme Fill Corp. v. San Francisco Bay Conservation etc. Com.* (1986) 187 Cal.App.3d 1056, 1065 [232 Cal.Rptr. 348].) The union argues that if the courts do not intervene, the DIR Director will apply section 1773.4 to all requests for classification in cases involving overlapping scopes of work and will permit a contractor to pay its workers the lowest published rate if overlapping scopes of work make the proper prevailing rate unclear.

We do not find these arguments to be persuasive. First, an administrative decision may not be expressly relied on as precedent unless so designated by the agency. (Gov. Code, § 11425.60, subd. (a).) In this matter, the DIR Director did not designate that its ruling on review of the civil wage and

---

[14] To the extent that this argument suggests that the 20-day time period set out in section 1773.4 is too short, that argument is best made to the Legislature, not a court of law.

penalty assessment was precedential. Thus, he does not view this issue as one that is likely to recur.

■ The union counters that the department is applying the underlying *rationale* of the decision in similar cases, despite its assertion that the decision itself has no express precedential value.[15] It fears that the DIR will expand the scope of section 1773.4 beyond its proper limits. (See, e.g., *Slurry Seal, supra*, 98 Cal.App.4th at pp. 658–659.) We do not share these fears. Courts have made it clear that the section 1773.4 limitation period does not apply if a determination would not be applied retroactively against a specific contract on which there has been a call for bids. (See *Slurry Seal, supra*, 98 Cal.App.4th at p. 659; see also § 1773.6.) This limitation was implied in the DIR Director's decision in the review of the underlying civil wage and penalty assessments and was conceded by the DIR Director on appeal. The documents that the union cites in support of its claim that the DIR is applying section 1773.4 too broadly demonstrate to us only that the DIR is applying that provision in a manner consistent with our own view of its proper scope by requiring interested parties to raise an issue within the 20-day period set out in that provision if enforcement of a sought-after ruling might be applied retroactively to a specific contract. However, if the DIR might, for example, use a failure to file a request for a rate of pay determination within the section 1773.4 time period as a means to bar an interested party from obtaining a determination that would not apply retroactively, but would only apply prospectively, our decision—and those of other courts—setting out the proper interpretation of section 1773.4 should prevent that occurrence. (See, e.g., *Slurry Seal, supra*, 98 Cal.App.4th at pp. 658–659.)

Thus, we decline the union's invitation to waive application of the exhaustion of administrative remedies requirement codified in section 1773.4 in this case. As we find that this provision applies to the case before us and that the union failed to exhaust its administrative remedies by filing its initial request for a rate of pay determination within 20 days of the call for bids on the underlying contracts, we conclude that the trial court properly dismissed the underlying petition seeking to retroactively enforce those rate of pay determinations.[16]

---

[15] The union reiterates this concern in its request for judicial notice, which we grant. The documents of which we take judicial notice involve contracts on which work had begun before the department. In one, the department stated that its DLSR would no longer issue minimum rate of pay decisions in cases in which more than one craft or classification can perform a specific type of work if the request was not filed prior to or within 20 days of the commencement of bids.

[16] In light of this ruling, the standing issues that the union raised and the issue pertaining to which parties were the proper respondents are moot.

The judgment is affirmed.

Ruvolo, P. J., and Rivera, J., concurred.

On August 29, 2007, the opinion was modified to read as printed above.