[No. A125494. First Dist., Div. Three. June 29, 2010.]

ALAMEDA COUNTY JOINT APPRENTICESHIP AND TRAINING COMMITTEE et al., Plaintiffs and Appellants, v. ROADWAY ELECTRICAL WORKS INC. et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part D. of the Discussion.

**COUNSEL**

Law Offices of Ellyn Moscowitz, Ellyn Moscowitz and Matthew Kleckner for Plaintiffs and Appellants.

Burnham Brown and Andrew Shalauta for Defendants and Respondents.

**OPINION**

**SIGGINS, J.**—Appellants, the Alameda County Joint Apprenticeship and Training Committee (JATC), the International Brotherhood of Electrical Workers Local 595 Health and Welfare Trust, the International Brotherhood of Electrical Workers Local 595 Northern California Chapter National Electrical Contractors Association Labor Management Committee and Edward W. Scott Electric Company, Inc., sued respondents Roadway Electrical Works Inc. (Roadway) and MCM Construction, Inc., for unfair and unlawful competition under Business and Professions Code section 17200 et seq. and interference with prospective economic advantage. Appellants' causes of action are all premised upon an allegation that respondents are using unauthorized workers in the rebuilding of the San Francisco-Oakland Bay Bridge to perform certain tasks that must be performed by certified electricians pursuant to Labor Code section 3099.[1] The trial court concluded that appellants' causes of action implicate the authority of the Director of the California Department of Industrial Relations (the Director) to determine the scope of work for electricians under the prevailing wage law, and that appellants were required to exhaust the administrative remedy provided in section 1773.4 before filing suit. Because appellants had not done so, respondents' demurrer to the complaint was sustained without leave to amend.

We reverse. In the published portion of this opinion, we hold that appellants' claims brought under section 3099 arise independently of the prevailing wage law and do not challenge the authority of the Director to determine the scope of work or the prevailing wage. Thus, there was no requirement that appellants exhaust their administrative remedy before filing suit. In the unpublished portion of the opinion, we decline to stay this action under the doctrine of primary jurisdiction.

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

## BACKGROUND

■ Read together, sections 3099 and 3099.2 provide that electrical contractors holding a C-10 specialty license must use certified electricians, enrolled apprentice electricians, or properly supervised electrical trainees to do electrical work.[2] Respondent Roadway is a C-10 specialty electrical contractor.[3] In spite of its status as a specialty contractor, Roadway has used uncertified workers rather than certified electricians to perform electrical work on the Bay Bridge and other unspecified public works projects.[4] Roadway's use of uncertified workers in this way enabled it to unfairly submit a low bid and secure the work on the Bay Bridge project. Respondent MCM Construction, Inc., failed to adequately supervise Roadway's activities and acquiesced in Roadway's unlawful use of uncertified workers. Appellants suffered economic injury as a result of respondents' unlawful acts, and sought declaratory and injunctive relief, restitution, damages, and an accounting.

Respondents demurred on the basis that appellants' complaint was really a challenge to prevailing wage and scope of work determinations by the Director that were relied upon by California's Department of Transportation (Caltrans) and respondents in order to formulate bid documents and perform work on the Bay Bridge project. Thus, in order to contest respondents' practice of utilizing uncertified workers for electrical work, appellants should have first exhausted the administrative remedy provided under section 1773.4. Alternatively, respondents argued the court should abstain from deciding the controversy because the subject of appellants' complaint was within the Director's primary jurisdiction.

The trial court concluded that all of appellants' claims "borrow from the prevailing wage laws" and they were required to exhaust their administrative remedy by filing a petition with the Director under section 1773.4 within 20 days of the Caltrans call for bids on the Bay Bridge project. Because

---

[2] We will collectively refer to the categories of workers described in section 3099 as "electricians."

[3] Because we are reviewing a ruling on a demurrer, we assume the truth of all the factual allegations of appellant's complaint. (*Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95 [36 Cal.Rptr.3d 170].)

[4] Respondents argue that the second amended complaint challenges the bids and contracts on the Bay Bridge project because appellants allege that certain scopes of work performed under the contract is electrical work that should have been performed by the inside wiremen classification. This construction reads the complaint too narrowly. In context, the claims advanced in the second amended complaint allege that respondents utilized unauthorized employees to perform electrical work that by law was to be done by certified personnel. For example, appellants' prayer for declaratory relief simply seeks a declaration that electrical work be performed by certified electricians. As we shall explain, the claims turn on the respondents' obligations under state law and do not implicate the bids or contracts for the Bay Bridge project.

appellants did not exhaust, the court sustained the demurrer without leave to amend and dismissed the action. Appellants timely appealed.[5]

## DISCUSSION

### A. Standard of Review

We review an order sustaining a demurrer de novo to determine whether the factual allegations of the complaint are adequate to state a viable cause of action under any legal theory. (*Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1190 [71 Cal.Rptr.3d 87]; *Cobb v. O'Connell, supra,* 134 Cal.App.4th at p. 95.) "[W]e assume the truth of all facts properly pleaded in the complaint . . . as well as those facts that may fairly be implied or inferred from the express allegations." (*Cobb, supra,* at p. 95.) We "independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, if possible, and reading it as a whole, while viewing its parts in context." (*Ibid.*) While respondents suggest the trial court's order should be reviewed under an abuse of discretion standard, that standard applies when we review a trial court's determination to grant or deny leave to amend, an issue not presented in this appeal. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569]; *Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

### B. The Prevailing Wage Law and Section 3099 et seq.

■ The prevailing wage law generally requires a contractor or subcontractor on a public works project to pay its workers the prevailing rate of wages as "set by the DIR Director for each locality where the work is to be performed for each craft, classification or type of worker needed to execute a public works contract, based on a statutorily mandated methodology." (*Sheet Metal Workers Internat. Assn., Local Union No. 104 v. Rea* (2007) 153 Cal.App.4th 1071, 1078 [63 Cal.Rptr.3d 672] (*Sheet Metal Workers*); see § 1770.) It was enacted to protect and benefit employees of contractors who work on projects paid for with public funds. (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985 [4 Cal.Rptr.2d 837, 824 P.2d 643].)

---

[5] Both parties have filed requests for judicial notice. Appellants withdrew their request to include in the record excerpts from the deposition of a long-term Department of Industrial Relations employee. Respondents request notice of certain pleadings that were inadvertently omitted from the clerk's transcript on appeal, certain legislative history materials, and additional deposition excerpts. We grant respondents' request for judicial notice of exhibits A through D under Evidence Code sections 452 and 453. Respondents' request for judicial notice of exhibit E and appellants' request are denied as moot.

In setting the prevailing wage rates, section 1773 requires the Director to consider applicable wages established by collective bargaining agreements and federal public works projects in the locality. If those are not actually the prevailing rates in the area, the Director must "obtain and consider further data from the labor organizations and employers or employer associations . . . . ." (§ 1773.) Section 1773.2 requires a body awarding a public works contract to specify in its call for bids the prevailing rate for each craft, classification or type of worker needed to execute the contract, or to include a statement that copies of the prevailing rates are on file at its principal office for review.

In the bid notice for the Bay Bridge contract, Caltrans stated that the prevailing wage information was available in the labor compliance office at the offices of the Caltrans district director, and also available on the Department of Industrial Relations Internet Web site. "Prevailing rates and related scope of work provisions for the affected craft, classification or type of worker are regularly posted on the DIR's Web site by its Division of Labor Statistics and Research (DLSR)." (*Sheet Metal Workers, supra*, 153 Cal.App.4th at p. 1075.)

■ Section 1773.4 provides that within 20 days of a call for bids, any prospective bidder or representative of any craft, classification or type of worker involved may petition the Director "to review the determination of any [prevailing wage] rate or rates upon the ground that they have not been determined in accordance with the provision of Section 1773 of this code." Implementing regulations require that a petition seeking review under section 1773.4 state, inter alia, "[t]he manner in which the wage rate determined by the Director fails to comply with the provisions of . . . Section 1773." (Cal. Code Regs., tit. 8, § 16302, subd. (c)(7).) Judicial review of the Director's prevailing wage determinations is barred unless the administrative procedures specified in section 1773.4 have been exhausted. (*Sheet Metal Workers, supra*, 153 Cal.App.4th at pp. 1082–1083.)

The trial court determined that appellants were required to exhaust the administrative procedures specified in section 1773.4 as a precondition to their filing suit against respondents for their alleged violations of section 3099 et seq.[6] But section 3099 was not enacted as part of the prevailing wage law. It was added to the Labor Code in 1999 to require that the Division of Apprenticeship Standards of the Department of Industrial Relations "establish and validate minimum standards for the competency and training of electri-

---

[6] The cause of action for intentional interference with prospective economic advantage also alleges Roadway engaged in violations of the Labor Code, including section 3099. Our analysis in the following discussion generally applies to all the claims in appellants' complaint.

cians through a system of testing and certification." (§ 3099, subd. (a)(1).) Supporters advocated passage of section 3099 on the basis that competency standards are required for electricians because improper wiring is dangerous and raises concerns of public safety. The implementing regulations to section 3099 recognize that: "Improper electrical connections can result in fire or other damage to property and can cause injury and death." (Cal. Code Regs., tit. 8, § 290.0.) The term "electricians," in section 3099, subdivision (c) includes "all persons who engage in the connection of electrical devices for electrical contractors licensed pursuant to Section 7058 of the Business and Professions Code, specifically, contractors classified as electrical contractors in the Contractors' State License Board Rules and Regulations."[7]

Section 3099.2, subdivision (a)(1) requires that "[p]ersons who perform work as electricians shall become certified pursuant to Section 3099 . . . [and], uncertified persons shall not perform electrical work for which certification is required."[8] Subdivision (b)(1) further provides: "Certification is required only for those persons who perform work as electricians for contractors licensed as class C-10 electrical contractors under the Contractors' State License Board Rules and Regulations."[9]

C. *A Claim That a Contractor Is Violating Section 3099 Need Not Be Administratively Exhausted Under Section 1773.4.*

■ Because the trial court determined that "all of [appellants'] claims borrow from the prevailing wage laws," it sustained respondents' demurrer without leave to amend due to appellants' failure to exhaust under section 1773.4. The court's analysis and respondents' argument to this court largely

---

[7] Those who perform work on electrical connections under 100 volt-amperes, certain work for public utilities, or electrical work ordinarily and customarily performed by stationary engineers are not considered electricians. (§ 3099, subd. (c).) Nor does section 3099 cover "electrical work in connection with the installation, operation, or maintenance of temporary or portable electrical equipment performed by technicians in the theatrical, motion picture production, television, hotel, exhibition, or trade show industries." (§ 3099, subd. (c).)

[8] A 2008 amendment to section 3099.2 substituted "shall" for "may" in the text of subdivision (a)(1). (Stats. 2008, ch. 716, § 2.)

[9] The California Code of Regulations defines the subcategories of electricians who must be certified under section 3099.2, and states that a "General Electrician is one who performs work for a C-10 electrical contractor installing, constructing or maintaining any electrical system that is covered by the National Electrical Code." (Cal. Code Regs., tit. 8, § 290.1; see also Cal. Code Regs., tit 8, § 291.0 [listing certification categories].) Although respondents argue that the provisions of the National Electrical Code "do not impact the DIR's authority to determine the scope of work for electricians on public projects," they do not challenge appellants' assertion that the National Electrical Code generally covers the type of work at issue in this appeal. Moreover, the classifications of California's Contractors State License Board describe a C-10 electrical contractor as one who "places, installs, erects or connects any electrical wires, fixtures, appliances, apparatus, raceways, conduits, solar photovoltaic cells or any part thereof, which generate, transmit, transform or utilize electrical energy in any form or for any purpose."

turn on an application of our appellate district's decision in *Sheet Metal Workers, supra*, 153 Cal.App.4th 1071. As we shall explain, *Sheet Metal Workers* does not require that claims brought under section 3099 et seq. be administratively exhausted under section 1773.4.

In *Sheet Metal Workers*, a union filed a petition for writ of mandate to challenge a decision by the Director. The dispute arose after a roofing subcontractor installed sheet metal roofs on public works projects using roofers instead of sheet metal workers. (*Sheet Metal Workers, supra*, 153 Cal.App.4th at pp. 1075–1076.) Since the prevailing wage for roofers was less than for sheet metal workers, the union sought rate of pay determinations by the Director in order to establish that "sheet metal worker" was the proper classification of the workers used to install the metal roofing. (*Ibid.*) A labor commissioner imposed civil wage and penalty assessments against the subcontractor and it sought review within the agency. (*Id.* at pp. 1076–1077.) The Director dismissed the wage and penalty assessments after finding that installation of metal roofs "overlapped both the roofing and sheet metal work classifications in the two affected counties," when the subcontractor entered into contracts to perform the work. (*Id.* at p. 1077.) "At all relevant times, the scope of work provisions posted on the DLSR Web site for the craft of roofer in [the affected] counties included specific references to metal roofing, based on language drawn from the collective bargaining agreements of the local roofers unions. At the same time, the scope of work posted by the DLSR for the craft of sheet metal worker in these two counties included 'all . . . metal work.' " (*Id.* at pp. 1075–1076.) The union sought a writ of mandate to compel the Director to set aside his decision, and one of the grounds supporting the trial court's decision to sustain demurrers to the petition was that the union had failed to exhaust its administrative remedies. (*Id.* at pp. 1077–1078.)

On appeal, Division Four of this court determined that the union's petition presented an issue that more closely resembled a challenge to a prevailing rate determination than an enforcement proceeding under the Labor Code, and that administrative exhaustion under section 1773.4 was required for "*any* challenge to a prevailing rate as not properly enacted according to the terms of section 1773, including a challenge that a single prevailing rate was not set for a specific craft, classification or type of work." (*Sheet Metal Workers, supra*, 153 Cal.App.4th at p. 1082.) The *Sheet Metal Workers* court therefore concluded that "the union's failure to exhaust its administrative remedy by requesting its rate of pay determination within the 20-day period

after the call for bids is fatal to its subsequent judicial action challenging the DIR Director's review of the civil wage and penalty assessments that was based on that rate of pay determination." (*Id.* at pp. 1082–1083.)

Here, the trial court, at respondents' urging, determined that appellants' claims under section 3099 present an issue similar to the issue considered by Division Four of our court in *Sheet Metal Workers* because the Director's "scope of work provisions for Alameda County permit either laborers or electricians to perform work on conduits." Since appellants' claims were similar to the scope of work challenge in *Sheet Metal Workers*, appellants were required to exhaust under section 1773.4 before filing suit. We disagree.

First of all, even though appellants acknowledge there is some overlap, we do not read the applicable scope of work provisions for laborers and electricians to present the same conflict as the scope of work provisions in *Sheet Metal Workers* so as to necessarily permit laborers and electricians to perform the same type of work on electrical conduit. The scope of work provisions for laborers in Alameda County allows them to perform "[a]ll laborers' work in connection with the construction of . . . any type of conduit . . . ." Laborers' work employs a commonly understood definition that includes, but is not limited to, all "work necessary to tend the carpenters and other building trades craftsmen . . . ." In Contra Costa County, but not Alameda County, there is also a "conduit layer" classification of laborer. On the other hand, the scope of work provisions for certain electricians in Alameda County provides that they "shall do all electrical construction, installation, maintenance and running tests of systems involving . . . all raceways (including underground conduits, duct bank, and all supports)." The fact that laborers may perform "laborers' work" in connection with the construction of any type of conduit does not lead to the conclusion that laborers' duties include construction or installation of electrical conduit that under law is to be done by certified electricians. These scope of work determinations do not present an irreconcilable description of duties that must be rectified in an administrative determination by the Director as did the scope of work determinations in *Sheet Metal Workers*.

In fact, the scope of work provisions for laborers and electricians must be harmonized just as we say. The mandate of section 3099, except in specified circumstances that do not apply here (see fn. 7, *ante*), prevents uncertified workers from doing an electrician's work on behalf of a C-10 licensed contractor. The core allegation of appellants' complaint is that respondents "performed the installation of electrical systems on multiple public works

construction projects, including the approach to the Bay Bridge, using workers other than [certified electricians] to perform [electricians'] electrical work." Based upon the allegations of the complaint, it would not be legally possible for the Director in scope of work provisions, or Caltrans in its bid documents, to specify that uncertified workers could perform such duties. Section 3099.2 prohibits uncertified personnel from performing electrical work for which certification is required. The Director and Caltrans have no authority to suspend the mandate of section 3099 in a scope of work determination, nor may a C-10 contractor disregard it.

█ Respondents try to refute appellants' legal claim that section 3099 et seq. require the use of certified electricians by arguing that electricians who are employed by contractors holding other than C-10 specialty licenses do not have to be certified. They argue this distinction demonstrates that appellants' allegations are "contrary to the plain language of Labor Code section 3099." But the distinction respondents illuminate with their argument is a distinction drawn by the Legislature. Section 3099 provides that " 'electricians' includes all persons who engage in the connection of electrical devices for electrical contractors licensed pursuant to Section 7058 of the Business and Professions Code, specifically, contractors classified as electrical contractors in the Contractors' State License Board Rules and Regulations." (§ 3099, subd. (c).) Section 3099.2, subdivision (a) requires that persons who work as electricians be certified under section 3099, and section 3099.2, subdivision (b)(1) further provides: "Certification is required only for those persons who perform work as electricians for contractors licensed as class C-10 electrical contractors under the Contractors' State License Board Rules and Regulations." This language limits the application of section 3099 et seq.'s certification requirements to C-10 electrical contractors.

█ It is also significant that the plain language of section 3099 et seq. does not limit its application to public works. It prohibits uncertified persons from performing specified work without regard to whether or not the work is performed as part of a public works project.[10] As we have already observed, section 3099 et seq. are not codified as part of the prevailing wage law. Their

---

[10] Section 3099.2 provides certain exceptions from its certification requirements for persons performing work for contractors licensed for low voltage electrical systems and electric signs, certain workers on public utilities' transmission or distribution systems, apprentices performing electrical work as part of an approved apprenticeship program, certain uncertified persons working to acquire on-the-job experience for certification, and certain nonresidential lighting trainees. (§§ 3099.2, subds. (b)(2), (3), (d), (e), (f), 3099.4.) Notably absent from this list of exemptions are workers on public works projects.

electrician certification requirements are contained within division 3, chapter 4 of the Labor Code dealing with apprenticeship programs, while the prevailing wage law (§§ 1720–1861) is codified in division 2, part 7.

The rationale of the *Sheet Metal Workers* court also appears to have been informed, in part, by a consideration that it would be unfair to allow a union to sue to enforce a rate of pay against a contractor who lacked notice that the cost of performing a contract was greater than it could have projected at the time a bid was submitted or a contract was formed. (*Sheet Metal Workers, supra*, 153 Cal.App.4th at pp. 1084–1085.) Here, there is no such concern about possible unfairness. Respondents were on notice of the obligation imposed upon C-10 specialty contractors to use electricians as required by section 3099 when they bid on and secured the contract for electrical work on the Bay Bridge. Recognition of a party's ability to state a claim under section 3099 without requiring exhaustion of remedies under the prevailing wage law also fosters public policy considerations supporting both laws and runs afoul of neither. It ensures that certified electricians are utilized in all circumstances when a task, if done improperly, "can result in fire or other damage to property and can cause injury and death." (Cal. Code Regs., tit. 8, § 290.0.) Requiring certified electricians to perform dangerous tasks inures to the safety and benefit of those who work on public projects as well as of those persons who will ultimately use and occupy them. Section 3099 et seq. is premised upon a concern over public safety and not over prevailing wages on public works.

■ Appellants are not challenging a prevailing rate or scope of work determination by the Director on the ground that it was not made in accordance with section 1773. Instead, they assert unfair competition claims based on respondents' alleged violations of the separate statutory obligation imposed on C-10 specialty contractors by section 3099 et seq. This independent statutory basis for appellants' claims takes them outside the scope of determinations made by the Director in implementation of the prevailing wage law and outside the application of *Sheet Metal Workers, supra*, 153 Cal.App.4th 1071. Appellants were not required to file a petition under section 1773.4 to exhaust their administrative remedy prior to filing suit.

D. *Primary Jurisdiction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 185.

## DISPOSITION

The judgment is reversed.

Pollak, Acting P. J., and Jenkins, J., concurred.